**Terry R. ISAACS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 21S00–9412–CR–1302.

Supreme Court of Indiana.

Dec. 4, 1996.

---

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, for Appellant.

Pamela Carter, Attorney General of Indiana, Christopher L. LaFuse, Deputy Attorney General, Indianapolis, for Appellees.

BOEHM, Justice.

A jury convicted Terry Isaacs of rape while armed with a deadly weapon, a Class A felony,[1] and battery while armed with a deadly weapon, a Class C felony.[2] The jury also found that Isaacs was a habitual offender. Isaacs was sentenced to a combined term of eighty-two years. He presents five issues for our review which we restate as:

I. Was it error for a juror who had been a rape victim to relate aspects of her experience during jury deliberations?

II. Was Isaacs entitled to discharge pursuant to Ind.Crim. Rule 4(C) because his trial did not begin within one year following his arrest?

III. Did the prosecutor's comments during closing argument constitute prosecutorial misconduct?

IV. Was the evidence sufficient to support Isaacs' conviction for battery, a Class C felony?

V. Did the trial court err in sentencing Isaacs?

We affirm the convictions and remand for a new sentencing order.

### I. Facts and Procedural History

We recite the facts most favorable to the verdict. On March 11, 1992, Larissa Harrison went to a bar with a friend. After the bar closed at 2:30 a.m., the two proceeded to a party at the home of a friend of Larissa's brother. When that party broke up, Larissa, Freddie Atkinson and several others drove Larissa's car to Isaacs' house where they

---

**1.** Ind.Code § 35–42–4–1 (Supp. 1989).

**2.** Ind.Code § 35–42–2–1(3) (1988).

continued to drink whiskey. In the early morning hours, Larissa and Freddie left for home but Larissa's car became stuck in a nearby ditch. The two decided to return to Isaacs' house to wait for daylight to move the car. Larissa and Freddie went into an unoccupied bedroom in Isaacs' home and had sexual intercourse. Shortly thereafter, Isaacs entered the bedroom naked and carrying a butcher knife. Isaacs hit Freddie with "something hard" and knocked him unconscious. Isaacs then pressed a knife against Larissa's throat and leg, threatened to kill her unless she had intercourse with him, and raped her. During the course of the rape, Freddie regained consciousness, saw Isaacs having intercourse with Larissa, and heard Larissa crying out "no, no, quit." Record at 770. After blacking out again, Freddie once more regained consciousness and escaped through a back door of the home to run for help.

The police were called and Officer George Allen went to Isaacs' home. Isaacs answered the door still in the nude. A few moments later, Larissa came out of the bedroom, fully clothed, but appearing quite frightened. Allen spoke to Larissa alone and was told of the rape and that Isaacs had a knife. Allen did not find a knife in the bedroom, but did observe an open cabinet drawer in the kitchen containing several knives. Isaacs was subsequently charged, arrested and convicted.

The day after the jury found Isaacs guilty, an alternate juror called the trial judge to report an incident that occurred during jury deliberations. Specifically, the jurors had discussed whether Isaacs used a knife when he raped the victim. One of the jurors, who stated during voir dire that she had been a victim of rape, related to the other jurors that a rapist had held a knife to her neck and that it did not leave any visible marks. Isaacs filed a motion to correct errors alleging that this juror had improperly influenced the others by informing the others about her experience as a rape victim. The trial court then held a hearing at which all twelve jurors were questioned. Only three recalled the juror's report of her own rape. Each of the three stated that the comment did not affect

their votes in any way. The trial court denied Isaacs' motion. This appeal ensued.

## II. Juror Misconduct

Isaacs first argues that trial court erred in denying his motion to correct errors because the jury considered evidence outside of the record. Isaacs contends that the juror introduced evidence that was not in the record by relating her personal experience as a rape victim. The State argues that her comment was not additional evidence but merely a proper statement of her own personal experience. The State also argues that if there was error, it was harmless.

■ Both parties rely on this Court's decision in *Saperito v. State*, 490 N.E.2d 274 (Ind.1986). In that case, a juror visited the scene of a battery incident. It is unclear whether the juror drove to the area during deliberations or whether he was simply familiar with the area because his parents lived there. The juror told the jury that a diagram of the scene was accurate and described trees in the area. This Court determined that the juror had testified regarding evidence not in the record, but held that any error was harmless. *Saperito*, 490 N.E.2d at 278. In that case, the juror provided information about the scene of the battery in question perhaps as a result of a mid-trial viewing unattended by any party. Here, however, the juror merely informed the other jurors about her own experience as a rape victim, not specific to the location or any other detail of the crime in question. This comment was not additional evidence. *See Morgan v. State*, 496 N.E.2d 400, 401 (Ind. 1986) (jurors are permitted to apply their everyday experiences and common sense). Indeed, the jurors were instructed to use their own "knowledge, experience and common sense gained from day to day living." Record at 138.

■ Because the juror was not interjecting information specific to the events of Isaacs' encounter with Larissa and Freddie, it was not testimony at all and Isaacs was not denied his state or federal right to confrontation. Just as tortfeasors take their victims as they find them, so also parties to litigation take their jurors as they find them. Voir

dire is the opportunity to examine potential jurors as to their unique talents, specialized knowledge, or unusual life experiences. Once these general experiences find their way into the jury room, they are fair game. There may be instances where a juror has specialized knowledge whose use during jury deliberations undermines the adversary system. *See* 13 R. MILLER, INDIANA PRACTICE § 606.206 at 103 (2d ed.1995); 2 WEINSTEIN'S EVIDENCE, P 606[04] at 606–44 to 606–46 (1996). But this is not one of them. To be sure, and thankfully, the juror in this case had an experience that is not common to everyone, but her knowledge does not approach the degree of specialization necessary to raise an issue of jury impropriety.

### III. Criminal Rule 4(C)

■■■ Isaacs next argues that he was entitled to discharge pursuant to Ind.Crim. Rule 4(C) [3] due to the State's failure to bring him to trial within one year following his arrest. The one-year period commences with the date of arrest or filing of information, whichever is later. In addition, if a defendant seeks or acquiesces in any delay which results in a later trial date, the time limitations of the rule are also extended by the length of those delays. *Burdine v. State,* 515 N.E.2d 1085, 1090 (Ind.1987), *reh'g denied.* By the rule's own terms, the one-year period is extended by any delay due to: 1) a defendant's motion for a continuance; 2) delay caused by the defendant's act; or 3) congestion of the court calendar.

■■ In this case, Isaacs was arrested and the information was filed on March 12, 1992. Trial was initially set for June 1, 1992. On May 26, 1992, Isaacs moved for a continuance because the State had not complied with Isaacs' discovery requests. The trial court granted a continuance and reset the trial for August 17, 1992. The State concedes that the elapsed time is not chargeable to Isaacs because it resulted from the State's failure to respond to discovery requests. *See Biggs v. State,* 546 N.E.2d 1271, 1274–75 (Ind.Ct.App. 1989) (court will not charge the defendant with any delay resulting from the State's failure to respond to discovery requests). Thus, the 158 days that elapsed between March 12, 1992, and August 17, 1992, are chargeable against the one-year period.

■■ A second delay occurred when the trial court, on its own motion, reset the trial date to November 22, 1992 (ninety-seven days), because the trial judge was unavailable. The State argues that this time is not attributable to the one-year period because it falls within the third exception of Crim.R. 4(C), court congestion. The State asserts that the reason the judge was unavailable was court congestion and relies upon this Court's decision in *Dudley v. State,* 480 N.E.2d 881 (Ind.1985), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). In *Dudley,* the defendant argued that the trial court should have discharged him because his trial was held three days beyond the seventy-day limit of Ind.Crim. Rule 4(B).[4] Because the trial judge was unavailable on the seventieth day, the case was heard the following Monday. This Court concluded that because the trial court properly justified the extension of time and the period of delay was a reasonable one, the trial court did not err by denying the defendant's motion for discharge. *Id.* at 890. In contrast, Isaacs' trial was scheduled more than three months

---

**3.** Indiana Criminal Rule 4(C) provides:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under

subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

**4.** This rule imposes a 70–day limit on trials of incarcerated defendants who move for speedy trials.

after the August 17, 1992 trial date. The record reveals that the trial court continued the August 17, 1992 date at a pre-trial hearing held on July 10, 1992. There is no specific court order resetting the trial date. Instead, there is simply an entry in the chronological case summary on July 30, 1992, stating that the trial date was continued on the court's own motion and resetting the trial date for November 22, 1992.[5] The trial court made no statement regarding court congestion. From this record, we cannot conclude that this delay was a result of court congestion. Accordingly, this ninety-seven day delay is also chargeable against the one-year period, bringing the total delay to 255 days.

The delays after November 22, 1992, did not bring the time period beyond one year. On November 20, 1992, two days before the trial date, Isaacs filed a motion for continuance and requested additional time to negotiate with the State. The trial court granted Isaacs' motion and reset the trial date for January 25, 1993. By the terms of Crim.R. 4(C), the defendant's filing of a motion for continuance extends the one-year period. Then on January 5, 1993, Isaacs' attorney filed a motion to withdraw because Isaacs allegedly sexually assaulted one of the attorney's other clients, creating a conflict of interest. If a defendant's actions cause the attorney's resignation or withdrawal, then he is charged with that delay. *Ferguson v. State*, 594 N.E.2d 790, 792 (Ind.1992). Here, the delay was occasioned by Isaacs' attorney's allegation that Isaacs assaulted another client. Thus, it was either the result an act of Isaacs that in turn caused his attorney's withdrawal or the result of an act of Isaacs' attorney. In either case, the delay is chargeable to Isaacs, not against the one-year period.

Following Isaacs' attorney's withdrawal, the trial was rescheduled for June 21, 1993. A final delay occurred due to Isaacs' June 7, 1993 motion to hire an expert. On June 9, 1993, the court set a hearing on the motion for the trial date, June 21, 1993, because defense counsel was out of the county until June 17, 1993, and the trial judge was attending a conference on June 17–18, 1993. Also on June 9, 1993, the trial court reset the trial date for October 18, 1993, so that if authority was given to hire an expert, Isaacs would have time to hire the expert and the State would have time to depose the defense expert and perhaps hire its own. This delay, to the extent caused by the defendant's own act, is not attributable to the one-year period. At the time the court postponed the trial for 119 days, 110 days remained to fulfill the one-year obligation. Isaacs could not have hired an expert and permitted preparation and deposition by the State within nine days. Because at least nine days of the 119–day delay were attributable to Isaacs, the resetting of the trial date did not violate Criminal Rule 4(C). The trial court properly denied Isaacs' motion to dismiss filed October 12, 1993.

## IV. Prosecutorial Misconduct

Isaacs next contends that the prosecutor's comments during closing argument constituted prosecutorial misconduct. A defendant waives possible error concerning the prosecutor's closing argument when he fails to object to the argument at trial. *Zenthofer v. State*, 613 N.E.2d 31, 34 (Ind.1993). The correct procedure to be employed when an improper argument is alleged is to request an admonishment, and if further relief is desired, to move for a mistrial. *Id.* Failure to request an admonishment or move for a mistrial results in waiver of the issue. *Id.* Isaacs concedes that he failed to object, but contends that the prosecutor's conduct resulted in fundamental error. For prosecutorial misconduct to be fundamental error, it must be demonstrated that the prosecutor's conduct subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Miller v. State*, 623 N.E.2d 403, 408 (Ind.1993), *reh'g denied.*

---

5. The entry, in its entirety, states:
   07/30/92 T Order on Motion For Dismissal— The Court having heard evidence, now denies the Defendant's Motion. Trial set for Aug. 17, 1992 is now continued on Ct's own motion and reset for trial on Nov. 22, 1992 at 9:00 A.M. and pretrial is reset for Sept. 23, 1992 at 1:30 P.M.
   Record at 2–3.

Isaacs contends that during closing argument, the prosecutor made impermissible references to the defendant's silence and failure to testify. The prosecutor made the following statements during closing argument:

> [Defense counsel] says nobody knows what goes on behind closed doors. That's not so. We had 3 people behind that door, and out of those 3 people who knew what happened, 2 of them have told you what happened.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Not a single witness has contradicted the account of what happened to Freddie and Larissa. Yes, there were some minor differences in what they remembered leading up to it or what they remember seeing in the excitement and the trauma and the stress, but absolutely no one has said it didn't happen.

Record at 920 and 928. In addition, during rebuttal the prosecutor stated, "I tell you again, we have 2 of those people telling you what happened." Record at 946. When a prosecutor's comment addresses other evidence rather than the defendant's failure to testify, there are no grounds for reversal. *Hopkins v. State*, 582 N.E.2d 345, 348 (Ind. 1991), *reh'g denied*. Arguments which focus on the uncontradicted nature of the State's case do not violate the defendant's right to testify. *Id.* Here the prosecutor's comments focused on the uncontradicted nature of the witnesses' testimony. The statements do not make reference to the fact that Isaacs did not testify at trial. Rather the prosecutor commented upon the evidence which was presented and the lack of evidence to the contrary. Accordingly, the prosecutor's statements did not deprive Isaacs of a fair trial and did not constitute fundamental error.

### V. Sufficiency of the Evidence

Isaacs next contends there was insufficient evidence that he committed battery, a Class C felony. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.*

The Indiana Code states that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery .... a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon." IC 35–42–2–1. Isaacs argues that the evidence presented at trial was insufficient to prove that he committed battery by means of a deadly weapon. A review of the record reveals that Larissa testified that when Isaacs entered the bedroom, he was holding a butcher knife. When a police officer arrived at Isaacs' house, Larissa told him that Isaacs had a knife. Freddie testified that Isaacs hit him with "something hard." On cross-examination, Freddie further testified that Isaacs hit him with whatever Isaacs had in his hand. From this evidence, the jury could reasonably infer that Isaacs committed battery by means of a deadly weapon.

Moreover, the battery statute requires proof of the battery by means of a deadly weapon *or* having resulted in serious bodily injury. IC 35–42–2–1. Here, there was also evidence presented which would have allowed the jury to conclude that the battery resulted in "serious bodily injury," which is defined as bodily injury that creates a substantial risk of death or that causes unconsciousness or extreme pain. IND.CODE § 35–41–1–25 (1988). Freddie testified that he was knocked unconscious after Isaacs hit him with something hard. The emergency room physician testified that Freddie suffered from a concussion and a fractured nose. From this evidence, the jury could have concluded that the object in Isaacs' hand inflicted serious bodily injury. Thus, there was sufficient evidence presented from which the jury could have inferred either that the battery resulted in serious bodily injury or that it was committed by means of a deadly weapon, or both. We find no error here.

## VI. Sentencing

Isaacs next contends that the trial court erred by sentencing him to an aggregate term of eighty-two years. Isaacs argues that the trial court used improper aggravating circumstances to enhance his sentence. It is within the discretion of the trial court to determine whether a presumptive sentence will be increased because of aggravating circumstances. *Widener v. State*, 659 N.E.2d 529, 533 (Ind. 1995). In this case, the sentencing judge found no mitigating circumstances and articulated the following aggravating circumstances: 1) Isaacs' criminal history, including two prior felonies, eighteen prior misdemeanor convictions and his juvenile record; 2) Isaacs was in need of correctional treatment that can best be provided by commitment to a penal institution; and 3) the imposition of a reduced sentence would depreciate the seriousness of the crime. Isaacs alleges that the trial court improperly applied the second and third aggravating circumstances.

We first note that an enhanced sentence may be imposed when the only aggravating circumstance is the defendant's prior criminal history. *Pruitt v. State*, 622 N.E.2d 469, 474 (Ind.1993), *reh'g denied*. In this case, Isaacs has an extensive criminal record, including a prior convictions for rape, possession of marijuana, and several misdemeanors. Thus, an aggravated sentence was warranted. Therefore, even if we were to find that the other two aggravators were inappropriately considered, as Isaacs alleges, there would be no error.[6]

Isaacs also argues that the trial court erred because it failed to identify the factors that supported the sentence enhancement separately from the factors that supported consecutive sentences. There is no constitutional or statutory prohibition against using the same factors to enhance a sentence and to impose a consecutive sentence. *Holmes v. State*, 642 N.E.2d 970, 973 (Ind.

1994); *see also Davidson v. State*, 558 N.E.2d 1077, 1092 (Ind.1990) (single aggravating circumstance may support both the enhancement of a presumptive sentence and the imposition of consecutive sentences). Thus, the trial court did not err in enhancing Isaacs' sentence.

Isaacs next argues that the trial sentenced him under the wrong version of the habitual offender statute. As a general rule, the law in effect when the crime was committed controls sentencing. *Propes v. State*, 587 N.E.2d 1291, 1293 (Ind.1992), *cert. denied*, 505 U.S. 1226, 112 S.Ct. 3046, 120 L.Ed.2d 913 (1992). Because Isaacs' crimes were committed in 1992, he should have been sentenced pursuant to the 1990 version of IC 35–50–2–8. That version stated in pertinent part:

> (e) The court shall sentence a person found to be an habitual criminal to an additional fixed term of thirty (30) years imprisonment.... If at least one (1) of the offenses relied upon to establish that the person accumulated two (2) prior unrelated felonies is a Class D felony, then the court may subtract up to ten (10) years from the additional fixed term of thirty (30) years.

IND.CODE § 35–50–2–8 (Supp. 1990). The legislature amended the statute in 1993. *See* 1993 Ind. Acts P.L. 164, § 13. The 1993 version requires that the court sentence a habitual criminal "to an additional fixed term that is not less than the presumptive sentence for the underlying offense nor more than three (3) times the presumptive sentence." IND.CODE § 35–50–2–8 (1993). However, the additional term cannot be more than thirty years. *Id.*

In this case, the trial court sentenced Isaacs to an aggravated term of forty-five years for the Class A rape conviction and then increased that sentence by an additional thirty years because the jury determined Isaacs to be a habitual offender. Record at 1022–23. The sentencing judge stated that

---

6. We note that the "depreciate the seriousness of the crime" aggravator may be used only when considering the imposition of a sentence of shorter duration than the presumptive sentence. *Gregory–Bey v. State*, 669 N.E.2d 154, 159 (Ind.

1996). However, the improper use of this aggravating circumstance does not invalidate a sentence enhancement where other valid aggravating circumstances are found. *Widener*, 659 N.E.2d at 533.

the additional thirty years was the "maximum time because the Court can impose up to 3 times the presumptive." Record at 1023. This statement clearly illustrates that the judge was sentencing Isaacs under the 1993 version of the habitual offender statute. This was error because Isaacs was sentenced for offenses that occurred in 1992. Moreover, the 1990 version states that the court may subtract up to ten years when one of the prior unrelated felonies is a Class D felony, as is the case here. We therefore must remand to the trial court for imposition of a sentence under the 1990 version of the statute.

Finally, Isaacs contends that his sentence is manifestly unreasonable. We will not revise a sentence authorized by statute except where the sentence is manifestly unreasonable in light of the nature of the offense and character of the offender. Ind. Appellate Rule 17(B)(1). A sentence is not manifestly unreasonable if a reasonable person could find the sentence appropriate to the particular offense and offender. App.R 17(B)(2). Here, the trial court correctly relied on Isaacs prior criminal history as an aggravating circumstance warranting an enhanced sentence. As noted above, Isaacs has an extensive criminal history, including two prior felony convictions (rape and possession of marijuana) and several misdemeanor convictions. In this case, Isaacs raped a woman while armed with a deadly weapon and committed battery while armed with a deadly weapon. His many contacts with the criminal justice system have not improved his character or dissuaded him from committing criminal acts. In addition, the 1990 version of the habitual offender statute authorizes an "additional term of thirty years" which *may* be reduced up to ten years if one of two prior unrelated felonies is a Class D felony. IC 35–50–2–8. Because the trial court is in the best position to weigh the factors, we will not override its decision. *See Harris v. State,* 659 N.E.2d 522, 527 (Ind.1995) (sentencing determinations are within trial court's discretion). Considering the trial court's findings on aggravating circumstances and that the court found no mitigating circumstances, Isaacs' sentence is not manifestly unreasonable.

## VII. Conclusion

We affirm Isaacs' convictions. However, because it appears that the trial court sentenced Isaacs for 1992 convictions under the 1993 version of IC 35–50–2–8, we remand for resentencing under the proper statute.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., concurs except with respect to *part II,* in which he concurs in result.