**Phillip BUHRT, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 979S250.

Supreme Court of Indiana.

Nov. 10, 1980.

John F. Surbeck, Jr., Grimm & Grimm, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted, after trial by jury, of one count of second degree murder. Ind.Code § 35–1–54–1 (Burns 1975). This direct appeal challenges the sufficiency of the evidence to support the verdict.

On the rainy night of May 29, 1976, the defendant, John Carlin, and John Shock were headed south on State Road 5 in a blue pick–up truck. The defendant was driving. Carlin sat in the middle, and Shock sat by the passenger window. Shock was carrying a gun, which was located under the seat of the truck.

Curtis L. Atteberry, Jr., the victim, was also heading south behind them on his motorcycle. Behind him in a passenger automobile was a friend, Jay Huffman. Both Atteberry and Huffman passed the defendant's vehicle. Just previously, the defendant said, "Why don't you shoot this guy on the motorcycle and take his money?" Shock responded that he would, if the defendant wanted him to. Carlin said they should not do it. At that time Shock pointed the gun out the window and pretended that he was firing it. After the motorcycle and automobile overtook them, the conversation about shooting the motorcyclist was resumed. Shock once again agreed.

At the intersection of U.S. Highway 30, Huffman and Atteberry stopped and said goodbye to each other. Huffman turned right into Highway 30, and Atteberry turned left, toward Fort Wayne. The defendant and his companions followed Atteberry.

On Highway 30, Carlin continued his attempt to dissuade Shock from the plan. Defendant drove the truck into the left lane, and as it approached the motorcycle, Shock said, "Just give me the word." The defendant said, "Now," or something to that effect, and Shock fired three shots, two of which hit Atteberry. The motorcycle veered into the path of the truck and crashed into the road median. On June 23, 1976, Atteberry died of the gun shot wounds.

The defendant testified at trial and offered a different version of these events. He stated that Carlin first suggested shooting the motorcyclist; that he never moved the truck into the left lane; that Shock told him to look out for cars, which he did do, and that he did say "Go ahead." He also testified, however, that he thought the gun was not loaded and that Shock was just joking around.

Both John Shock and John Carlin testified for the State. They differed as to the words employed in the conversation, but their versions of the happenings were substantially the same. Both testified that it was the defendant who first suggested shooting the motorcyclist.

Defendant contends that the evidence discloses only that he acquiesced in Shock's conduct and failed to take active measures to prevent Shock from committing the homicide and that there was no evidence of active participation by him, or the existence of a common scheme or plan.

■ Defendant is correct in his assertion that mere negative acquiescence is not enough to render one guilty as an accessory.

"This court has previously stated that negative acquiescence is not enough to constitute a person guilty of aiding and abetting the commission of a crime. *Mattingly v. State*, (1952) 230 Ind. 431, 104 N.E.2d 721. Consequently, this court has always looked for affirmative conduct either in the form of acts or words from which reasonable inferences of a common design or purpose to effect the commission of a crime might be drawn. See *Sage v. State* (1890), 127 Ind. 15, 30, 26 N.E. 667; *Peats v. State* (1938), 213 Ind. 560, 574, 12 N.E.2d 270."

*Pace v. State*, (1967) 248 Ind. 146, 148–49, 224 N.E.2d 312, 313.

■ The defendant's argument hinges upon a determination that active participation in the homicide cannot properly be found from the evidence. However, it does not recognize our standard of review on challenges to the sufficiency of the evidence.

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed." (citation omitted). "In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citation omitted).

*Loyd v. State*, (1980) Ind., 398 N.E.2d 1260.

Had the jury accepted Defendant's version of the incident, it would have been required to acquit him. It is apparent,

however, that it accepted the version of Shock and Carlin, which it had a right to do. *Geisleman v. State*, (1980) Ind., 410 N.E.2d 1293.

From the version of the events, as related by the witnesses, Shock and Carlin, and the logical inferences therefrom, a reasonable man could have found, beyond a reasonable doubt, that the homicide was the product of an agreement between Defendant and Shock and that Defendant actively participated in carrying out the plan. At cannot be said that it would be unreasonable to conclude that Defendant conceived the idea and brought it to fruition by maneuvering Shock as well as the truck.

"It is true that mere presence at the scene of a crime, with nothing more, is insufficient evidence to sustain a conviction for participation in the crime." (citations omitted). "However, presence at the scene in connection with other circumstances tending to show participation in the crime may be sufficient to sustain a conviction." (citations omitted).

*McGill v. State*, (1969) 252 Ind. 293, 299–300, 247 N.E.2d 514.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.