Dorian PETERSON, Byron Anderson
Thompson, Appellants–
Defendants,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A05–9712–CR–516.

Court of Appeals of Indiana.

Aug. 31, 1998.

702

Mark A. Bates, Jeff Schlesinger, Crown Point, for Appellants–Defendants.

Jeffrey A. Modisett, Attorney General, James A. Garrard, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAILEY, Judge.

### Case Summary

Co–appellants–Co–defendants Dorian R. Peterson ("Peterson") and Byron Thompson ("Thompson") appeal their convictions, after a joint jury trial, of one count of Criminal Recklessness, a class C felony,[1] and two counts of Criminal Recklessness, class D fel-

1. IND.CODE § 35–42–2–2(b)(1) (results in serious bodily injury by means of a deadly weapon).

onies.[2] Both Peterson and Thompson submitted appellant's briefs in this consolidated appeal. We affirm Thompson's convictions. However, we reverse Peterson's convictions and remand for a new trial.

### Issues

Thompson raises one issue which was also raised by Peterson. The issue which both defendants raised may be restated as:

I. Whether prosecutorial misconduct during closing statement requires reversal.

Peterson raises four issues. However, because one requires reversal, we address it only. Restated, it is:

II. Whether the trial court erred by refusing to give Peterson's tendered instructions regarding accomplice liability.

### Facts

The evidence most favorable to the verdicts reveals that the three victims lived together. One of the victims owed Peterson $50.00. Peterson and his associates went to the victims' home to collect the debt, but the debtor/victim was not home. Peterson was furious and grabbed one of the other victims by the throat, demanding payment. Peterson left without collecting the debt.

When the debtor/victim returned, he contacted Peterson and agreed to meet him to pay the debt. The debtor/victim and the two other victims armed themselves with knives and went out to meet Peterson. Peterson and Thompson, along with some other men, met the victims. Thompson brandished a handgun. After the debtor/victim paid the debt, he heard Peterson say to Thompson, "Man, f— these dudes, pop these bitches." As the three victims ran, three shots rang out. The debtor/victim was struck in the foot with a bullet. After being shot, the debtor/victim looked back and saw Thompson holding a gun. None of the other men with Thompson had been armed with a gun.

Peterson and Thompson were both charged with three counts of Criminal Recklessness, each count relating to a different victim. Both defendants testified in their own defense, denying the charges. Peterson denied having given the order to fire the gun. Peterson testified that someone else did the shooting and it was unrelated to the dispute between him and the victims.

During closing argument, the deputy prosecutor made several statements or arguments which drew objections from defendants' counsels. The specific statements made by the deputy prosecutor about which the defendants complain are summarized as follows:

[Defense counsel] made the statement to you that all witnesses' testimony should be considered evenly, but you have a common sense. You can use that law that the judge will instruct you on and think about interest, whose butt's on the line here, Dorian Peterson and Byron Thompson.

. . . .

Let me just put it like this, if ever a person had a reason to fabricate a story and distort the truth, it's got to be people like Dorian Peterson and Byron Thompson. And I guess the best way to put it, I'm just going to use an example. Let's say you have an event, a sequence of events, a chain of events, whatever it may be, and then the whole world stops and you're the last twelve people that could be talked to, that police could come up to. Anybody, you know, could go to—let's say you're historians and you're the ones that are there to figure out what happened, okay, and you have choices to make. Of all the people you could go to figure out what happened, the last person you would go to or the last people you would go to would be the people that set the whole chain of events off in the first place, especially if it can get them in trouble.

. . . .

Do you think human beings can tell the same story the same way, what do we got, twelve different times now, three victims, four different times total? That's not human. If their stories lined up every time, that would be incredible. Inconsistencies are what they base their argument on and say don't find our clients guilty because they didn't tell the same stories. That's

2. IND.CODE § 35–42–2–2(b)(1)(2) (while armed with a deadly weapon).

not possible, it's human, and inconsistencies are the one thing that prove all of the victim's veracity in this case.

. . . .

Are we going to have different stories? You bet, that's human, and I want to make that point as clear as I can. I guess that's what it means to be a victim of a violent crime. You don't get a trial by jury. You don't get the right to appeal. You get convicted and sentenced to life and a painful memory of what people did to you.

. . . .

Well, that's what you get, and then you wait patiently for your day of justice to come. You wait patiently for eight months to take that witness stand and explain your side of the events, and you know what you get? You get called a big fat liar. That's what you get. That's the justice that you get. You see, it's not for no reason that [Defense counsel] asked all of you in voir dire have any of you ever been a victim of a violent crime because if he had and you answered yes to this, you know, and none of you did.

The deputy prosecutor then began to make the argument that the defendants had not presented any other witnesses to testify in their defense. After defense counsel interposed objections, and the court intervened, the deputy prosecutor argued with the judge as follows:

... all these arguments I ran by [another judge] way before this trial, and they're cutting me off on every one. . . . I apologize, ladies and gentlemen. Everything I want to say, I guess, isn't proper.

The deputy prosecutor stated further as follows:

Now, the defense lawyers have pointed to a lot of different things here to create reasonable doubt. They pointed to the fact that Byron Scott was the first name given, . . . . Where's the bullet, where's the shells? You know what, every animal in the animal kingdom has a defense mechanism, okay? The scorpion has a stinger. A bee has a stinger as well. The lion has the strong forearms and the jaws. The chameleon can change colors. But, you see, the octopus has no defense at all, so

what it does when it's confronted by its attacker is that it jets out an inky blob like substance into the water, into the air, and it wins by confusion. It escapes unharmed because its attackers get confused, and I am not these two gentlemen's attackers. You are.

Although defendants' attorneys raised objections during the closing argument, neither moved for a mistrial. The trial court overruled some objections, directing that the proceedings "move along," sustained other objections, and admonished the jury to disregard some of the statements made by the deputy prosecutor. The court repeatedly indicated that, despite the deputy prosecutor's statements, the jury would be instructed regarding the law.

The defendants were convicted as charged. This appeal followed.

## Discussion and Decision

### I. Prosecutorial Misconduct

Peterson and Thompson assert that the deputy prosecutor's statements set out above were improper. Specifically, the defendants argue that the deputy prosecutor improperly informed the jury that 1) the defendants' role was to confuse the issues; and 2) the defendants had the right to an appeal. Additionally, the defendants assert that the prosecutor intimated that he, as prosecutor, was not allowed to *argue* certain evidence because it was improper. The defendants contend that the improper statements, when considered cumulatively, prejudiced their rights to a fair and impartial trial.

At the outset, we note that the correct procedure to be employed when the prosecutor makes an improper argument is to request that the trial court admonish the jury and, if further relief is desired, to request a mistrial. *Isaacs v. State*, 673 N.E.2d 757, 763 (Ind.1996). The failure to request an admonishment or move for a mistrial results in waiver. *Id.* To overcome waiver under these circumstances, the defendant must demonstrate fundamental error. *Id.*

A successful claim of prosecutorial misconduct requires a determination that there was misconduct by the prosecutor

which had a probable persuasive effect on the jury's decision. *Cox v. State*, 696 N.E.2d 853, 859 (1998) ("grave peril" test abandoned as superfluous). The degree of impropriety of the conduct is irrelevant. *Id.*

 A timely admonition may cure prejudice resulting from prosecutorial misconduct. *See DeBerry v. State*, 659 N.E.2d 665, 669 (Ind.Ct.App.1995). Also, the trial court's jury instructions are presumed to cure any improper statements made during trial. *Fox v. State*, 520 N.E.2d 429, 431 (Ind.1988).

 In general, the prosecution is not permitted to introduce evidence of a defendant's exercise of his constitutional rights in order to impeach the defendant or invite the jury to infer the defendant's guilt from the exercise of those rights. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, the prosecutor's comment upon the lack of evidence by the defense concerning otherwise incriminating evidence against the defendant is proper as long as the State does not focus upon the accused's failure to testify. *Martinez v. State*, 549 N.E.2d 1026, 1028 (Ind.1990); *Channell v. State*, 658 N.E.2d 925, 930 (Ind.Ct.App.1995) (arguments which focus on the uncontradicted nature of the State's case do not violate the defendant's right not to testify), *trans. denied*. Also, a prosecutor may respond to allegations and inferences raised by the defense even if the prosecutor's argument would otherwise be objectionable. *Denes v. State*, 508 N.E.2d 6, 11 (Ind.1987). Finally, our supreme court recently held that a prosecutor's statement that defendant was able to tell his version of the facts, but that the victim could not, did not subject defendant to grave peril. *See Roach v. State*, 695 N.E.2d 934, 942–943 (1998).

 In the present case, neither defendant requested an admonishment or a mistrial. The trial court instructed the jury that it had no right to discredit or disregard the defendants' testimony merely because they were defendants in the case, but to consider their testimony in the same manner as that of any other witness. (R. 56). The trial court instructed the jury further that it should determine the facts from the evidence presented and not to be influenced by pity, prejudice, sentiment, conjecture, sympathy, passion, public opinion, or public feelings. (R. 58). The jury was instructed regarding the presumption of innocence, and that the defendants were not required to present any evidence to prove their innocence or to prove or explain anything. (R. 55). Also, the trial court admonished the jury to disregard some of the deputy prosecutor's argument. Finally, the prosecutor's attack upon the defendants' credibility was justified, at least in part, to rebut the argument of the defense which attacked the credibility of the State's witnesses.

Based on the above, we conclude that, even if portions of the deputy prosecutor's argument were improper, it was not probable that they had a persuasive effect on the jury's decision. Therefore, we find no error.

## II. Accomplice Liability Instruction

Peterson argues the trial court's instruction on accomplice liability was inadequate to properly inform the jury regarding the law in this area. Specifically, Peterson argues the trial court erred by refusing to give the jury the following instructions that he tendered:

> Mere presence at the scene of a crime does not establish a person as an accessory; nor is acquiescence in the commission of a crime by another sufficient to render a person guilty as an accomplice.

> In order for the State to meet its burden of proving the allegations contained in Count I, Count II and Count III, the State must have proven beyond a reasonable doubt that Dorian Peterson aided, induced or caused criminal recklessness in each Count and that when Dorian Peterson so acted, he was aware of a high probability that his behavior was aiding, inducing or causing criminal recklessness.

(R. 64–65). The sole instruction given by the trial court on accomplice liability simply tracked the language of Ind.Code § 35–41–2–4 and read as follows:

> A person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense, even if the other person:

(1) has not been prosecuted for the offense;

(2) has not been convicted of the offense; or

(3) has been acquitted of the offense.

(R. 48).

*Standard of Review*

 The instruction of the jury lies largely within the trial court's discretion. *Jewell v. State*, 539 N.E.2d 959, 961 (Ind. 1989). The instruction of the jury should inform it regarding the law applicable to the facts without misleading it and to enable the jury to understand the case and arrive at a just, fair, and correct verdict. *Storey v. State*, 552 N.E.2d 477, 484 (Ind.1990). In charging the jury, the court must state to them all matters of law which are necessary for their information in giving their verdict. IND.CODE § 35–37–2–2(5); *Storey*, 552 N.E.2d at 484. In considering whether error has resulted from the refusal of a tendered instruction, the court on review determines whether the instruction correctly states the law, whether there is evidence in the record to support the giving of the instruction, and whether the substance of the instruction is covered by other instructions which are given. *Baird v. State*, 604 N.E.2d 1170, 1178 (Ind.1992), *cert. denied*, 510 U.S. 893, 114 S.Ct. 255, 126 L.Ed.2d 208. A defendant must demonstrate that his substantial rights have been prejudiced in order to obtain a reversal for the trial court's failure to instruct the jury. *Cliver v. State*, 666 N.E.2d 59, 67 (Ind.1996).

*Accomplice Liability*

 The particular facts and circumstances of each case must be considered in determining whether a person participated in the commission of an offense as an accomplice. *Byrer v. State*, 423 N.E.2d 704, 706 (Ind.Ct.App.1981). An accused's mere presence at the scene of the crime is insufficient to establish that he aided another person to commit an offense. *Id.* Similarly, mere acquiescence in the commission of the offense is insufficient to convict a person as an accomplice. *Id.* Rather, in order to sustain a conviction as an accomplice, there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of a common design or purpose to effect the commission of a crime may be reasonably drawn. *Buhrt v. State*, 274 Ind. 370, 412 N.E.2d 70, 71 (1980).

 An instruction on accomplice liability which draws the focus of the jury away from the total circumstances showing the defendant's knowledge and conduct is misleading and is appropriately refused. *See Zenthofer v. State*, 613 N.E.2d 31, 34 (Ind. 1993); *Polk v. State*, 467 N.E.2d 666, 670 (Ind.1984). Moreover, the jury must be instructed that accomplice liability requires proof that the defendant engaged in voluntary conduct in concert with his accomplice. *Small v. State*, 531 N.E.2d 498, 499 (Ind. 1988).

 In the present case, the trial court's instruction did not impart the information provided by the Indiana pattern jury instruction on accomplice liability which, in addition to tracking the language of IND.CODE § 35–41–2–4, reads:

To convict the defendant, the State must have proved each of the following elements:

1. [*name other person*] committed the crime of [*name crime aided, induced or caused*] in that [name other person] [*insert elements of the crime alleged to have been aided, induced or caused*] and the defendant

2. knowingly or intentionally

3. aided [*name other person*] in committing the [*name crime*] [or]

induced [*name other person*] to commit the [*name crime*] [or]

caused [*name other person*] to commit the [*name crime*].

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of [*name crime*], a Class [*insert class of crime*] [misdemeanor] [felony].

*Indiana Pattern Jury Instructions—Criminal* (2d ed. 1991), No. 2.11 at 43.

The propriety of giving the "mere presence" instruction on accomplice liability is well-settled. *See Wright v. State,* 690 N.E.2d 1098, 1109–10 (Ind.1997) (jury also instructed that "negative acquiescence is not enough."); *Steele v. State,* 672 N.E.2d 1348, 1351–52 (Ind.1996) (jury also instructed to consider the defendant's "course of conduct before and after the occurrence of the offense."); *Hartman v. State,* 669 N.E.2d 959, 961 (Ind. 1996) (jury also given an instruction listing factors to use to infer a defendant's participation); *Weyls v. State,* 598 N.E.2d 610, 615–616 (Ind.Ct.App.1992) (jury also instructed that defendant must have engaged in some affirmative conduct in the form of acts or words that he intended to cause or facilitate the commission of the crime), *trans. denied.*

In the present case, the victim testified that Peterson and he had settled their dispute and "everything was fine" and "we were straight" when a heated argument broke out between different individuals which culminated in the charged shooting. (R. 264, 275, 353). As noted above, it was undisputed that the shots were fired after the victims had turned and run. Peterson testified that an unknown person had fired the shots. (R. 753–55).

Peterson's tendered instructions correctly stated the law and were supported by the evidence. Additionally, Peterson's tendered instructions were not adequately covered by the cursory accomplice liability instruction given by the trial court. The thrust of the trial court's instruction, which simply tracked Ind.Code § 35–41–2–4, focused on the law that a person could be convicted as an accomplice regardless of whether the other person had been prosecuted or convicted. Thus, the trial court's instruction failed to focus on the knowledge and conduct of the defendant and wholly failed to instruct that the defendant must have engaged in some affirmative conduct in aiding or inducing the offense. Under these circumstances, we must conclude that Peterson's tendered instructions should have been given to enable the jury to understand the case in order to arrive at a just,

fair, and correct verdict. Therefore, the trial court's refusal to give Peterson's instruction was reversible error.

### Conclusion

Thompson's convictions are affirmed. However, we reverse and remand with instructions that Peterson be retried.

NAJAM, J., concurs.

RILEY, J., dissents in part and concurs in part with separate opinion.

RILEY, Judge, concurring in part and dissenting in part.

I would affirm the convictions of Thompson and Peterson. The instruction given by the trial court on accomplice liability is the statutory definition. In denying the appellant's tendered instruction, the trial court stated that it was covered by the court's instruction defining accomplice liability. I agree. The instruction given to the jury correctly states the law and does not explicitly or implicitly indicate that mere presence at the scene justifies a conviction based upon accomplice liability. The trial court's instruction clearly states that a conviction is warranted *only* if the defendant knowingly or intentionally aided, induced or caused another person to commit an offense. (emphasis added).

An error in an instruction will not warrant a reversal unless the error is of such a nature that the entire charge of which it is a part misled the jury on the law of the case. *Grossenbacher v. State,* 468 N.E.2d 1056, 1059 (Ind.1984). The jury was not misled by giving an instruction that defined accomplice liability by reciting the statutory definition. Peterson has failed to show how his rights were substantially harmed by failing to give the tendered instruction.