**Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MATTHEW G. GRANTHAM**
Bowers, Brewer, Garrett & Wiley, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARL E. BOWMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A02-1205-CR-431 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON SUPERIOR COURT
The Honorable Jeffrey R. Heffelfinger, Judge
Cause No. 35D01-1012-FA-300

**January 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Carl E. Bowman appeals his convictions for Class A felony dealing in methamphetamine, Class D felony possession of methamphetamine, Class B felony conspiracy to commit dealing in methamphetamine, and Class A misdemeanor possession of paraphernalia. Bowman contends that the trial court erred in instructing the jury on accomplice liability. He also argues that his convictions violate double-jeopardy principles. We conclude that the trial court did not err in instructing the jury and Bowman's convictions do not violate double jeopardy. We affirm.

**Facts and Procedural History**

On November 15, 2010, Huntington City Police Sergeant Jay Kyle and Officer Ray Pearson received an anonymous tip that a runaway juvenile was in Bowman's home at 1428 Walnut Street in Huntington, Indiana. When the officers arrived at Bowman's home, Bowman invited them in. Once inside, Officer Pearson spotted a marijuana pipe and burnt marijuana cigarettes. Officer Pearson asked Bowman for consent to search the rest of the property but Bowman refused. After Officer Pearson obtained a search warrant, the officers searched the rest of the home. The officers found items associated with the manufacture of methamphetamine, including sulfuric acid, lye, fertilizer, lithium batteries, cold packs, plastic bottles, and pseudoephedrine pills. Some of these items were found in a black and yellow backpack near the front door. The officers also found soiled coffee filters and a glass pipe inside a box with Bowman's divorce papers. The filters and pipe later tested positive for methamphetamine.

When Bowman spoke with detectives, he admitted that he had purchased pseudoephedrine for a man named John Aslinger, so that Aslinger could make methamphetamine to share with him. Bowman also admitted that the coffee filters and glass pipe found in his home were his and contained methamphetamine. Bowman said he was addicted to methamphetamine and had smoked it earlier that day.

The State charged Bowman with six counts: Count 1: Class A felony dealing in methamphetamine, Count 2: Class C felony possession of chemical reagents or precursors with intent to manufacture controlled substances,[1] Count 3: Class D felony possession of methamphetamine, Count 4: Class A misdemeanor possession of paraphernalia, Count 5: Class A misdemeanor possession of marijuana, and Count 6: Class B felony conspiracy to commit dealing in methamphetamine. The possession-of-marijuana charge was later dismissed. *See* Appellant's App. p. 78.

At Bowman's jury trial, the State argued that Bowman was the principal in some of the charged crimes and an accomplice in others. Sergeant Kyle and Officer Pearson described the items found in Bowman's home and Bowman's statements to them about his methamphetamine use. Casey Newsome, Bowman's former roommate, also testified. Newsome said that in the past, he had witnessed Aslinger make methamphetamine in Bowman's kitchen with Bowman's consent, and that Bowman would shake the manufacturing bottles "after everything was in it." Tr. p. 436. Newsome also confirmed that Aslinger would share the methamphetamine he made with Bowman. According to Newsome, Bowman and Asligner had an agreement to this effect: "[Y]ou let me use your

---

[1] In the jury instructions and closing argument, the trial court and the State refer to this crime as "illegal drug lab."

3

house to make some [methamphetamine] and I'll give you some out of it." *Id.* at 439. Newsome also testified that he and Bowman would go together to purchase ingredients used to make the methamphetamine and Bowman would also ask others to purchase pseudoephedrine for him. *Id.* at 440-41. Newsome said that Aslinger kept the manufacturing ingredients in a black and yellow backpack. *Id.* at 442. As to Bowman's use of methamphetamine, Newsome testified that Bowman smoked methamphetamine "quite a bit," sometimes using a glass pipe. *Id.* Newsome admitted that he had not been present at Bowman's home on the night of Bowman's arrest.

The State also called Indiana State Trooper Andy Smith to testify. Trooper Smith explained how methamphetamine could be manufactured using the items found at Bowman's home and the one-pot method.[2] Huntington City Police Officers Shane Jones and Cory Boxell also testified about the search of Bowman's home and the items found inside.

In its closing argument, the State gave a detailed summary of the charges and evidence against Bowman, starting with Class A felony dealing in methamphetamine:

> Carl Bowman allowed John Aslinger to cook methamphetamine at his house because in exchange[,] Carl Bowman got what he desperately wanted; methamphetamine and some money. He also aided John Aslinger when he shook that bottle of cooking methamphetamine. So he not only aided in the manufacturing of methamphetamine by permitting his house to be used[,] he also shook the bottle of cooking methamphetamine while in his home. And that, ladies and gentleman, is [Class A] dealing in methamphetamine . . . .

*Id.* at 526. The State went on to detail the evidence for the other counts:

---

[2] Describing the one-pot method, Trooper Smith said: "It's usually a twenty[-]ounce or a thirty[-]ounce bottle. It's not very big. It's easy to hide. It's easy to conceal and to transport. The whole process is done in a bottle like that and will last from start to finish in about two [] hours." Tr. p. 277.

Count two [] is possession of an illegal drug lab as a Class C felony. In that particular crime, Carl Bowman allowed John Aslinger to stay in his house and he allowed him to keep the backpack that contained the ingredients to manufacture methamphetamine.

\* \* \* \* \*

For Count [] three, that was possession of methamphetamine, the State established that [Bowman] possessed methamphetamine in two different ways . . . . There was methamphetamine found in the coffee filters that were contained in that [] box in [Bowman's] living room; they have meth[amphetamine]. And then there was a glass pipe or paraphernalia that was tested by the State laboratory and it possessed meth[amphetamine] as well . . . .

\* \* \* \* \*

Count four [] is possession of paraphernalia. [I]n this particular instance, again, it's the glass pipe . . . . How do we know it's paraphernalia? [B]ecause it had meth[amphetamine] inside it . . . so that's how we know that [] pipe was used to smoke or ingest a controlled substance.

\* \* \* \* \*

Then Count six is conspiracy to deal in methamphetamine. We already established through elements . . . that dealing in methamphetamine includes manufacturing methamphetamine. The State proved that [Bowman] and John Aslinger entered into . . . an agreement and that agreement was that John Aslinger was . . . going to cook meth[amphetamine] and give Carl Bowman meth[amphetamine] in exchange for Carl Bowman providing the pseudoephedrine.

*Id.* at 527-530. After closing arguments, the trial court gave its final instructions,

including the following:

A person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense. In order to commit an offense by aiding, inducing or causing, the defendant must have knowledge that he is aiding, inducing or causing the commission of the offense.

A person may be convicted of Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab by aiding another to commit Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab even if the other person has not been prosecuted or convicted of

5

Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab.

In order to commit Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab by aiding, a person must have knowledge that he is aiding the commission of Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab. To be guilty, he does not have to personally participate in the crime nor does he have to be present when the crime is committed. Merely being present at the scene of the crime is not sufficient to prove that he aided the crime. Failure to oppose the commission of the crime is also insufficient to prove aiding another to commit the crime. But presence at the scene of the crime or failure to oppose the crime's commission are factors which may be considered in determining whether there was aiding another to commit the crime.

Appellant's App. p. 28-29. Bowman did not object to these jury instructions or tender instructions of his own.

The jury found Bowman guilty of all five of the remaining counts. At sentencing, the trial court entered judgment on Counts 1, 3, 4, and 5 only, merging Counts 1 and 2. Tr. p. 592. The court imposed an executed sentence of twenty-five years in the Department of Correction. Bowman now appeals.

**Discussion and Decision**

On appeal, Bowman contends that the trial court erred in instructing the jury on accomplice liability. Specifically, Bowman argues that the accomplice-liability instruction did not: (1) name the person Bowman was alleged to have aided, (2) contain a statement about voluntary conduct, and (3) separately list the elements of each offense Bowman was alleged to have aided. Bowman also argues that his convictions violate double jeopardy.

**I. Jury Instructions**

6

Bowman argues that the trial court erred in instructing the jury on accomplice liability. We review the trial court's decision to give a jury instruction for an abuse of discretion. *Brooks v. State*, 895 N.E.2d 130, 132 (Ind. Ct. App. 2008). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions viewed as a whole must misstate the law or otherwise mislead the jury. *Id.*

However, Bowman did not object to the instruction he challenges on appeal, nor did he tender any jury instructions of his own. Generally, where a defendant has failed to object to a jury instruction or failed to tender alternate instructions, the defendant's claim of error on appeal is waived; however, we will consider a defendant's argument that the error constituted fundamental error. *Staley v. State*, 895 N.E.2d 1245, 1248 (Ind. Ct. App. 2008), *trans. denied.* "The fundamental error doctrine is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.*

The jury instructions at issue here are instructions five and six. Bowman concedes that the instructions correctly state the law, but points out that they are not the pattern jury instructions on accomplice liability. Indiana's pattern jury instruction on accomplice liability tracks the language of Indiana Code section 35-41-2-4 and additionally provides:

> To convict the defendant, the State must have proved each of the following elements:
>     1. [name other person] committed the crime of [name crime aided, induced or caused] in that [name other person] [insert elements of the crime alleged to have been aided, induced or caused]
>
>     and the defendant

7

2.  knowingly or intentionally

3. aided [name other person] in committing the [name crime]

[or]

induced [name other person] to commit the [name crime]

[or]

caused [name other person] to commit the [name crime].

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of [name crime], a Class [insert class of crime] [misdemeanor] [felony].

1 Ind. Pattern Jury Instructions (Criminal) 2.11 (2011).  Here, the trial court instructed the jury as follows:

A person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense.  In order to commit an offense by aiding, inducing or causing, the defendant must have knowledge that he is aiding, inducing or causing the commission of the offense.

A person may be convicted of Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab by aiding another to commit Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab even if the other person has not been prosecuted or convicted of Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab.

In order to commit Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab by aiding, a person must have knowledge that he is aiding the commission of Possession of Methamphetamine, Dealing in Methamphetamine or Illegal Drug Lab.  To be guilty, he does not have to personally participate in the crime nor does he have to be present when the crime is committed.  Merely being present at the scene of the crime is not sufficient to prove that he aided the crime.  Failure to oppose the commission of the crime is also insufficient to prove aiding another to commit the crime.  But presence at the scene of the crime

8

or failure to oppose the crime's commission are factors which may be considered in determining whether there was aiding another to commit the crime.

Appellant's App. p. 27-29. While the preferred practice is to use the pattern jury instructions, there is no prohibition against the use of appellate-decision language in jury instructions. *Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005), *trans. denied*.

Bowman's first challenge to the instructions used here is that they do not name the person he was alleged to have aided—information that is expressly set forth in the pattern jury instruction on accomplice liability. But there was no threat of misleading the jury in this respect. The evidence at trial pertaining to accomplice liability was that John Aslinger and Bowman worked together to make methamphetamine. This was reaffirmed by the State's detailed closing argument, in which the State repeatedly stated that John Aslinger was the individual Bowman was alleged to have aided. *Supra* p. 5-6, Tr. p. 526-530. There is no error here.

We also reject Bowman's claim that the instructions fail to inform the jury that Bowman must have engaged in voluntary, affirmative behavior.[3] We have previously held that the words such as "aid" and "participate" denote affirmative conduct or action and sufficiently inform the jury of the affirmative-action requirement. *Boney v. State*, 880 N.E.2d 279, 294 (Ind. Ct. App. 2008), *trans. denied*; *see also Townsend v. State*, 934 N.E.2d 118, 130 (Ind. Ct. App. 2010), *trans. denied*. In concluding that such language

---

[3] To the extent Bowman analogizes this case to *Peterson v. State*, 699 N.E.2d 701, 705-06 (Ind. Ct. App. 1998), we find that analogy inapt. The jury instructions in *Peterson* were significantly shorter and included no active or passive language. The defendant in *Peterson* also tendered his own jury instructions, which the trial court refused. Bowman did not tender his own instructions or object to the instructions given.

9

satisfies the affirmative-action requirement, this Court has upheld jury instructions that further state, by way of contrast, that a person's presence at the scene or his failure to oppose the crime—primary examples of passive conduct—are not sufficient in and of themselves to establish accomplice liability. *Id.* The instructions here included active language and a contrasting statement about passive conduct. We conclude that the instructions sufficiently informed the jury of the requirement that Bowman have acted affirmatively in order to be convicted as an accomplice.

Bowman's final jury-instruction challenge is that the instructions "do not separate out—and list the elements—of each offense Bowman allegedly aided, induced, or caused. Instead, the instructions group together all of the offenses Bowman supposedly aided." Appellant's Br. p. 8. The State responds that this was done to prevent jury confusion; the trial court set forth the material elements for accomplice liability and then the elements of the underlying crimes in separate instructions. But Bowman does not explain why grouping the instructions in this way was error. Nor has he shown that he was denied fundamental due process. We therefore conclude that the trial court did not abuse its discretion in instructing the jury.[4]

---

[4] Bowman cites case law which holds that "an instruction on accomplice liability which draws the focus of the jury away from the total circumstances showing the defendant's knowledge and conduct is misleading and is appropriately refused." *Peterson*, 699 N.E.2d at 706. Bowman briefly argues that

> By way of example only, the instructions inform the jury that Bowman need not "personally participate in each act" of the criminal offense. While this statement is technically correct, it misleads the jury because it does not inform the jury that Bowman must "personally participate" in the criminal act to at least some extent, to wit, by some affirmative conduct.

Appellant's Br. p. 9. But we have already concluded that the instructions did inform the jury that Bowman must have acted affirmatively. When the "personally participate" language is read in conjunction with the other portions of the instructions, we cannot say that the jury was misled.

## II. Double Jeopardy

Bowman also contends that his convictions violate the Double Jeopardy Clause of the Indiana Constitution. Specifically, he claims that they fail the actual-evidence test. Whether convictions violate double jeopardy is a question of law which we review de novo. *Grabarczyk v. State*, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002).

Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), our Supreme Court concluded that two or more offenses are the same offense in violation of Article 1, Section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual-evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To find a double-jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* There is no double-jeopardy violation under the actual-evidence test when the evidentiary facts establishing the essential elements of one offense also establish only one or even several of the essential elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

11

In order to prove Bowman guilty of Class A felony dealing in methamphetamine as charged here, the State had to show that Bowman knowingly manufactured or aided in the manufacture of methamphetamine within 1000 feet of a public park. Ind. Code § 35-48-4-1.1(b)(3)(B)(ii); *see also* Appellant's App. p. 106. To prove Class D felony possession of methamphetamine, the State had to show that Bowman knowingly or intentionally possessed methamphetamine without a valid prescription. Ind. Code § 35-48-4-6.1(a); *see also* Appellant's App. p. 108. To prove Class B felony conspiracy to commit dealing in methamphetamine, the State had to show that Bowman entered into an agreement with another person with the intent to manufacture methamphetamine and committed an overt act in furtherance of that agreement. Ind. Code §§ 35-41-5-2, 35-48-4-1.1(a); *see also* Appellant's App. p. 97. Finally, to prove Class A misdemeanor possession of paraphernalia, the State was required to show that Bowman knowingly possessed a raw material, instrument, device, or other object that he intended to use to introduce a controlled substance into his body. Ind. Code § 35-48-4-8.3(a)(1); *see also* Appellant's App. p. 110.

Bowman contends that his convictions for possession of methamphetamine, conspiracy to commit dealing in methamphetamine, and possession of paraphernalia cannot stand in light of his conviction for dealing in methamphetamine. We disagree. As the State described in detail in closing argument, the evidence for each of these convictions was, in fact, separate and distinct.

At trial, the State argued that Bowman aided in dealing methamphetamine, presenting evidence that Bowman allowed Aslinger to cook methamphetamine in his

12

home and Bowman shook methamphetamine that was cooking in bottles. Tr. p. 526. To establish possession of methamphetamine, the State presented evidence Bowman possessed methamphetamine in the coffee filters and a glass pipe. *Id.* at 527-28. The State also set forth evidence that Bowman had admitted that the items were his, they contained methamphetamine, and he had smoked methamphetamine earlier that day. *Id.* at 528. To establish possession of paraphernalia, the State presented evidence that Bowman possessed a glass pipe for smoking methamphetamine. *Id.* at 528-29. Finally, to establish conspiracy to deal in methamphetamine, the State presented evidence that Bowman and Aslinger had an agreement whereby Aslinger could make methamphetamine at Bowman's home in exchange for a portion of the methamphetamine produced there, and that Bowman purchased pseudoephedrine for Aslinger. *Id.* at 529.

From this we conclude that separate and distinct evidence was presented regarding the crimes for which Bowman was convicted. We cannot say that there is a reasonable possibility that the evidentiary facts used by the jury to establish Bowman's conviction for dealing in methamphetamine may also have been used to establish his convictions for possession of methamphetamine, conspiracy to commit dealing in methamphetamine, and possession of paraphernalia. There is no double-jeopardy violation.

Affirmed.

BAILEY, J., and BROWN, J., concur.