## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 23 2019, 9:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Allan H. Walker, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 23, 2019

Court of Appeals Case No.
18A-CR-2305

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1705-MR-16621

**Bailey, Judge.**

# Case Summary

[1] Allan H. Walker, Jr. ("Walker"), appeals his convictions of Murder,[1] Robbery, as a Level 3 felony,[2] and Criminal Confinement, as a Level 6 felony.[3] We affirm.

# Issues

[2] Walker presents two issues for review:

  I.   Whether he was entitled to discharge under Indiana Criminal Rule 4(B)(1) because he was not brought to trial within seventy days of his speedy trial request; and

  II.  Whether sufficient evidence supports his conviction for murder as an accomplice.

# Facts and Procedural History

[3] During 2016, Sylvester Foster ("Foster") supported himself by working as a barber and by selling marijuana. Walker was a barber shop customer, and he typically purchased four ounces of marijuana from Foster on a twice-weekly basis. However, on December 23, 2016, Walker asked Foster to sell him five pounds of marijuana. Foster didn't have that amount, but agreed to sell Walker

---

[1] Ind. Code § 35-42-1-1(1).

[2] I.C. § 35-42-5-1.

[3] I.C. § 35-42-3-3.

three pounds. The transaction was to take place at an Indianapolis apartment Walker shared with his girlfriend. Considering Walker's demeanor and their past history, Foster felt "leery" about the unusually large sale. (Tr. Vol. III, pg. 22). He asked his brother-in-law, Kevin Dudley ("Dudley"), to accompany him to Walker's apartment.

[4] Foster drove his truck to Walker's apartment complex and parked under a carport about 100 feet away from Walker's apartment. Foster and Dudley were admitted inside the apartment and Foster, still apprehensive, locked the door. He noticed that Walker, who uses a wheelchair, had placed his wheelchair in a manner that blocked the other exit, a patio door. Foster handed Walker a one-pound bag of marijuana, Walker smelled it, and Foster asked for his money. At that time, someone yelled from upstairs: "don't nobody move." *Id.* at 36. An armed man entered the room and Dudley began to struggle with him for control of the gun. A masked man came out of the kitchen and hit Foster over the head with a liquor bottle.

[5] Eventually, Foster and Dudley were subdued and Walker ordered the other men to find something with which to tie up their victims. Foster pleaded with Walker to let them go, and Walker responded in a sarcastic tone that he would be sending them home. Walker ordered his companions to search the victims' pockets and the truck and they did so, taking all the available cash and Dudley's watch. Thereafter, Foster and Dudley were marched out to the truck at gunpoint, with their hands bound behind their backs with cords and their jackets draped over them.

[6] Foster sat in the driver's seat of his truck and Dudley sat in the passenger seat. One of the men threw Foster's truck keys onto his lap. At the same time, Foster heard and saw the other man shoot Dudley in the head. Foster was shot in the arm but managed to escape from his truck and run. As he ran, he yelled for help and begged an apartment resident to get the police. The shooter pursued Foster and shot him in the ear. Foster tried in vain to be allowed entry into an apartment and he feared that he would die without assistance. Reasoning that he "didn't want [Walker] to get away with setting [him] up and having [him] killed," Foster used his own blood to write on a glass panel "wheelchair cash guy." *Id.* at 65-66.

[7] Apartment complex employees and a resident had heard shots and they called 9-1-1. Police and ambulances arrived within minutes. After a thirteen-day hospitalization, Foster went home. However, Dudley did not survive the shot that had perforated his brain.

[8] On May 5, 2017, Walker was charged with murder, felony murder,[4] conspiracy to commit murder,[5] a Level 1 felony, two counts of armed robbery, as Level 3 felonies, and two counts of criminal confinement, as Level 3 felonies. At a pretrial conference, Walker's counsel simultaneously requested a speedy trial and a continuance. The trial court granted the continuance and advised Walker

---

[4] I.C. § 35-42-1-1(2).

[5] I.C. §§ 35-42-1-1, 35-41-5-2.

that the days attributable to the continuance would be chargeable to him for speedy trial purposes. The State later obtained a continuance, over Walker's objection, and the trial court denied Walker's motion for discharge pursuant to Criminal Rule 4.

[9] Walker's jury trial commenced on July 16, 2018. The jury found him not guilty of conspiracy to commit murder and one count of robbery, but guilty of all other charges. Because of double jeopardy concerns, the trial court entered judgments of conviction only upon one count of murder, one count of armed robbery, and one count of criminal confinement, reduced to a Level 6 felony. Walker was sentenced to an aggregate term of seventy-six years, consisting of sixty-two years for murder, a consecutive sentence of fourteen years for robbery, and a concurrent sentence of 910 days for criminal confinement. Walker now appeals.

## Discussion and Decision

## Criminal Rule 4

[10] Indiana Criminal Rule 4(B)(1), implementing a defendant's constitutional rights to a speedy trial, provides in relevant part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where

there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

[11]     A trial court's decision denying a motion for discharge under Criminal Rule 4 is reviewed for clear error, after according the trial court's findings reasonable deference. *Austin v. State*, 997 N.E.2d 1027, 1040 (Ind. 2013). A question of law is reviewed de novo. *Id.* at 1039.

[12]     At Walker's initial hearing, on May 11, 2017, the trial court set the case for a jury trial on July 17, 2017. At a pretrial conference on July 11, 2017, Walker requested both a speedy trial and a continuance.[6] The court advised defense counsel that, should the motion for a continuance be granted, "you don't put it in speedy trial posture." (Supp. Tr. at 10.) Counsel responded that her client was in poor health, and the trial court granted the continuance, clarifying:

> So you're moving to continue. That's okay. If you think –
> honestly, if you think you can be ready for trial, I'll set it within
> the seventy days. It's not a problem, but you won't be in speedy
> trial posture under the law.

*Id.* At the close of the hearing, the trial court re-iterated:

> We'll set it for trial September 18th. It is not, though, in speedy
> trial posture. This continuance is the defendant's. All of this
> time is chargeable to the defendant, and so, but if you're ready to

---

[6] Criminal Rule 4 does not require that a speedy trial request be made in writing. *Smith v. State*, 943 N.E.2d 421, 426 (Ind. Ct. App. 2011).

go on September 18th, I think the State can be ready to go. …
State is just on notice that the defense wants to be ready to go.

*Id.* at 11.

[13] At a pretrial conference on September 12, 2017, the State requested a continuance, and Walker objected that he was entitled to the September 18, 2017 trial setting. Later that day, the trial court issued a written order granting the State's motion for a continuance, explaining:

> [T]he previous continuance from July 11, 2017 was chargeable to the defense, as the defense requested the continuance. All time from July 17, 2017, the previous jury trial date, to the trial date scheduled for September 18, 2017, is chargeable to the Defendant for Criminal Rule 4B purposes. The Defendant's previous request for speedy trial is thus effective on September 18, [2017], with the seventy (70) day deadline expiring on November 27, 2017. The October 30, 2017 trial date is within that deadline.

(App. Vol. I, pg. 80.) On September 19, 2017, Walker filed a motion for discharge under Criminal Rule 4(B)(1), which was denied.

[14] On appeal, he argues that "the plain language of Criminal Rule 4(B) states that the seventy-day period begins the day *after* the request for a speedy trial, and only defense continuances *within* the seventy-day time period will extend the deadline. Walker did not request a continuance within the seventy-day period or otherwise delay the trial during this time." Appellant's Brief at 17. Walker's trial was initially set for July 17, 2017. His request for a continuance, made on July 11, 2017, caused his trial to be delayed until September 18, 2017.

However, Walker asserts that he cannot be charged with this delay because the seventy-day period begins on the first day after the speedy trial motion is made, and he made his motion for a continuance one day earlier.

Walker's argument assumes that he made – and did not retreat from – a speedy trial request. The record would suggest otherwise, as Walker was repeatedly advised by the trial court that the motion for a continuance was inconsistent with preserving his speedy trial rights. Walker elected to proceed with the trial setting occasioned by his motion for a continuance notwithstanding the trial court's clear attribution of the delay to Walker. "A defendant cannot cause delay and then demand a speedy trial." *Jackson v. State*, 663 N.E.2d 766, 769 (Ind. 1996). We cannot agree with Walker that his inconsistent requests positioned him for discharge under Criminal Rule 4(B) on September 19, 2017.

## Sufficiency of the Evidence – Murder Conviction

The State charged Walker as an accomplice to murder, which is the "knowing or intentional killing of another human being." I.C. § 35-42-1-1. "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense[.]" I.C. § 35-41-2-4. Walker argues a lack of evidence of his complicity in Dudley's murder because he was inside his apartment when Dudley was shot and there was no evidence that he aided the shooter afterward.

When reviewing a challenge to the sufficiency of the evidence, we neither reweigh evidence nor judge witness credibility. *Gibson v. State*, 51 N.E.3d 204,

210 (Ind. 2016). We view the "evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction, and will affirm 'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[18]     In *Griffin v. State*, we summarized the State's burden of proof with respect to accomplice liability:

> "It is not necessary that the evidence show the accomplice personally participated in the commission of each element of the offense." *Wilson v. State*, 455 N.E.2d 1120, 1123 (Ind. 1983). "[T]he acts of one accomplice are imputed to all." *Collier v. State*, 470 N.E.2d 1340, 1342 (Ind. 1984). So long as the State shows that one participated in the commission of an offense as an accomplice, the accomplice "is criminally responsible for everything which follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not intended as part of the original design or common plan…." *Johnson v. State*, 60 N.E.2d 762, 765 (Ind. Ct. App. 1992) (citations and quotations omitted), *trans. denied*.

> "The particular facts and circumstances of each case must be considered in determining whether a person participated in the commission of an offense as an accomplice." *Peterson v. State*, 699 N.E.2d 701, 706 (Ind. Ct. App. 1998). For [a] conviction to stand, "there must be evidence of [his] affirmative conduct, either in the form of acts or words, from which an inference of a common design or purpose to effect the commission of a crime may be reasonably drawn." *Id.* "Each participant must knowingly or intentionally associate himself with the criminal

venture, participate in it, and try to make it succeed." *Cohen v. State*, 714 N.E.2d 1168, 1177 (Ind. Ct. App. 1999), *trans. denied*. That said, the State need not show that [a defendant] "was a party to a preconceived scheme; it must merely demonstrate concerted action or participation in an illegal act." *Rainey v. State*, 572 N.E.2d 517, 518 (Ind. Ct. App. 1991).

While it is true that mere presence at the scene of a crime is insufficient to make one an accomplice, the Court may consider presence in conjunction with other factors that tend to show that one acted as an accomplice to a crime. *See Peterson*, 699 N.E.2d at 706. There are four factors relevant to this inquiry … "(1) presence at the scene of the crime; (2) companionship with another at the scene of the crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime." *Bruno v. State*, 774 N.E.2d 880, 882 (Ind. 2002).

16 N.E.3d 997, 1003-04 (Ind. Ct. App. 2014).

[19] When Dudley was shot, Walker was inside his apartment, "about 100 feet" away from and "straight behind" the carport where Foster parked when he had transactions with Walker. (Tr. Vol. III, pgs. 25, 28.) Walker had lured Foster with an offer to purchase an unusually large quantity of marijuana, but inside the apartment men were lying in wait to execute a robbery.

[20] Walker was the person giving orders to the men inside the apartment. He directed one man to search Foster's truck and he ordered the men to find something to tie up the victims. At one point, Walker took possession of a gun from the masked man and alternately pointed it at both Foster and Dudley. He spoke in a "sarcastic" manner with Foster about Foster's pleas for release. (Id.

at 44.)  Walker displayed no opposition as the armed men removed Foster and Dudley – both in restraints – from the apartment.  At that time, one of the men had his "gun jammed in" Dudley's side.  (*Id.* at 56.)  Foster formed the opinion that Walker would be getting away with murder if not apprehended and so he used his own blood to leave clues as to Walker's identity.

[21]     As for Walker's conduct after the murder, the State did not show that he had further contact with the shooter.  However, there was evidence that Walker and his girlfriend abruptly vacated the apartment before the girlfriend's lease ended.  The two other men were never identified, raising an inference that Walker made no effort to implicate the shooter.  The particular facts and circumstances of the case would constitute sufficient evidence to permit a fact-finder to conclude beyond a reasonable doubt that Walker was an accomplice to Dudley's murder.

# Conclusion

[22]     Walker was not entitled to discharge pursuant to Criminal Rule 4(B).  His murder conviction is supported by sufficient evidence.

[23]     Affirmed.

Riley, J., and Pyle, J., concur.